**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

STEPHEN A. THOMAS, PLC,

        CASE NO. 07-CV-12074

    Appellant,

        PAUL D. BORMAN

-vs-        UNITED STATES DISTRICT JUDGE

THE BANKRUPTCY ESTATE OF    STEVEN W. RHODES
MURPHY JONES,    CHIEF U.S. BANKRUPTCY JUDGE

    Appellee.
_____/

## OPINION AND ORDER
## AFFIRMING THE ORDER OF THE BANKRUPTCY COURT

Before the Court is Appellant Stephen A. Thomas, PLC's ("Appellant") May 11, 2007 appeal from a May 2, 2007 Order from the Bankruptcy Court. Appellant filed his brief on June 13, 2007. Appellee filed its brief on June 28, 2007. The Court held a hearing on the appeal on November 15, 2007. Having considered the entire record, and for the reasons that follow, the Court AFFIRMS the Bankruptcy Court's May 2, 2007 Order.

This appeal arises out of Appellant's contention that the Bankruptcy Court unreasonably reduced Appellant's attorney fees for work performed on behalf of the Debtor. This is the third time that this matter has been appealed to this Court.

The Court has previously summarized the history of this case:

> On December 2, 2004, Appellant provided Murphy Jones ("Debtor") a bankruptcy consultation. On January 3, 2005, Appellant filed a Voluntary Petition for Chapter 13 bankruptcy relief on Debtor's behalf. On April 13, 2005, Debtor's case was dismissed by the Bankruptcy Court due to poor payment history and unresolved Trustee objections. On April 19, 2005, Appellant filed a fee

1

application. The application requested $1,917.85 in fees and $74.33 in costs.

The Chapter 13 Trustee objected to certain parts of the fee application.

Thereafter, the bankruptcy court held a hearing on the fee application. The relevant portion of that transcript indicates that only the Appellant and the U.S. Trustee discussed Appellant's fee application, and the Trustee's position was as follows:

> $1900.00 has been requested in this case. If the total of my objections were granted, that would reduce the fee to $1372.00, and I would note that I have less than that on hand at this time.

The bankruptcy judge thereafter stated, "I'll take this under advisement and issue a written order." The bankruptcy judge did not discuss the fee application. He did not state, or even imply, that he was considering going below the Trustee's requested reduction to $1372.00. The bankruptcy court then issued an Order cutting Appellant's fee request to $500.

This Court's November 21, 2005 Opinion and Order further stated, in relevant part:

> The Bankruptcy Court issued an Order Regarding Fee Application of Attorney for Debtor on May 26, 2005, denying Appellant's Fee Application. The order stated that at the time the Chapter 13 case was dismissed, Debtor had a 45% payment history, the plan was underfunded and there were unresolved objections to the confirmation of the plan. The court concluded that the "record create[d] a substantial question about whether this bankruptcy case should have been filed, and about whether the debtor's counsel properly screened the case for viability and feasibility."
>
> Appellant initiated this appeal on July 13, 2005 and filed his brief on July 18, 2005. The Trustee did not file a response brief. At the motion hearing, the Trustee explained that it did not respond to the appeal because the Bankruptcy Judge did not award fees based on the Trustee's fee application objections. Indeed, Trustee counsel acknowledged that his view of proper fees for Appellant was significantly higher than the $500 flat fee awarded by the Bankruptcy Court.

Because the bankruptcy court failed to properly explain its reasoning for reducing counsel's fee request from $1917.85 to $500.00, far below the Trustee's position that the court reduce fees only to $1372.00, this Court's Order of November 21, 2005 remanded the case for an explanation.

After this Court's Remand, Appellant, on January 31, 2006, requested a hearing before the bankruptcy court on its fee application prior to its second ruling. The bankruptcy court did not grant Appellant's request – indeed, there was no response from the bankruptcy court to this request.

On March 31, 2006, the bankruptcy court issued an Order, again ruling that Appellant was only entitled to a $500.00 fee plus costs. The bankruptcy court concluded that Appellant should have known that his client could not have feasibly filed a Chapter 13 plan due to the debtor's substantial mortgage arrearage. The bankruptcy court further stated that, in its opinion, the case should have been filed under Chapter 7, if at all. The bankruptcy court concluded, as additional grounds for its fee cut, that when the case was dismissed, the debtor did not obtain the benefit of a discharge. In the opinion of the bankruptcy judge, the only benefit that the debtor received from filing the action was a 100-day stay on his mortgage foreclosure proceedings.

Relying upon *In re Boddy*, 11 U.S.C. § 330(a), Fed. R. Bankr.P. 9011(b), and further citing to the Michigan Rules of Professional Conduct 1.0 and 2.1 ("MRPC"), the bankruptcy court noted that "no hours of service beyond those hours reasonably expended to file the case and obtain the stay are reasonably compensable."

Thus, the bankruptcy court's opinion on remand, went beyond a discussion of attorney's fees to impliedly, if not directly, cast aspersion of Appellant's professional conduct:

> Moreover, the debtor's attorney has a duty to exercise independent judgment on behalf of the client, *Mich. R. Prof. Conduct 2.1,* and thus cannot file a chapter 13 case simply because the client so instructs. Indeed, this duty of independent judgment is consistent with, and not in conflict with, the attorney's duty of zealous advocacy under *Mich. R. Prof. Conduct 1.0,* because sometimes zealous advocacy of the client's best interests means that the attorney must advise the client not to proceed with a chapter 13 case.

*Stephen A. Thomas, PLC v. Estate of Jones*, 360 B.R. 624, 625-27 (E.D. Mich. 2007) (internal citations omitted).

This Court remanded this matter a second time to the Bankruptcy Court with instructions "to hold a hearing at which Appellant c[ould] argue the merits of his fee request and the validity of his professional conduct." *Id.* at 627.

3

The Bankruptcy Court held that hearing on March 7, 2007. Thereafter, in an Order dated May 2, 2007, the Bankruptcy Court concluded:

> At t[he] hearing, counsel again maintained that when the case was filed, both the debtor and counsel believed that the debtor could propose a feasible plan. That belief however was based upon the erroneous assumption that the debtor was current in his mortgage, or no more than one month in arrears. Nevertheless, as noted in this Court's opinion of March 31, 2006, the arrears were actually $8,453.28. At the March 7, 2007 hearing, counsel disclosed the additional damaging fact that no independent investigation was performed to determine the arrearage. Moreover, nothing was presented at the hearing to address this Court's previous findings that the debtor's budget of $1,203.32 was unrealistic and contributed to the debtor's 45% pay history at the time of the confirmation hearing.
>
> Similarly, nothing was presented at the recent hearing to address this Court's previous finding that based on the debtor's pay stubs, the debtor's projected income was overstated on schedule I, which further undermined feasibility. Nor was anything presented to address the Court's previous finding that a mathematical error on schedule J caused a necessary increase in the debtor's plan payment from $462.24 to $576.24, yet further undermining feasibility.
>
> Finally, nothing was presented that persuades the Court that the case was properly filed as a chapter 13 case. Accordingly, the Court reaffirms its prior finding that "This record overwhelmingly establishes that the applicant should not have recommended or filed a chapter 13 case for this debtor and that the feasibility of a chapter 13 plan was never reasonably arguable due to a lack of net disposable income to cure the substantial mortgage arrearage." Accordingly, the Court reaffirms its prior finding that debtor's attorney is only entitled to be compensated for the time spent obtaining the benefit of the automatic stay, 2.5 hours of service at $200 per hour. In these circumstances, the Court further reaffirms its prior award of $500.00 in fees and $74.33 in expenses.

*In re Jones*, No. 05-40042, slip op. 1-2 (Bankr. E.D. Mich. May 2, 2007) (unpublished).

On May 11, 2007, Appellant filed a timely appeal of the Bankruptcy Court's Order. Appellant makes the following arguments, urging the Court once again to reverse the decision of the Bankruptcy Court:

(1) The Bankruptcy Court failed to make a proper attorney fee determination pursuant to the "lodestar method";

4

(2) The Bankruptcy Court erroneously relied upon the Michigan Rules of Professional Conduct and Fed. R. Bankr. P. 9011(b) in making its determination; and

(3) The Bankruptcy Court erroneously relied upon the following reasons in reducing Appellant's requested attorney fees of $1917.85 plus $74.33 in expenses to $500.00 plus $74.33 in expenses:

(a) The Debtor's budget of $1,203.32 was unrealistic;
(b) The Debtor's unrealistic budget contributed to a 45% pay history;
(c) The Debtor's projected income was overstated;
(d) A mathematical error on the Schedule J caused an increase in the Debtor's payment plan from $462.24 to $576.24;
(e) Appellant did not independently investigate the Debtor's representation concerning his possible mortgage arrearage; and
(f) The only benefit that the Debtor received was the 100-day automatic stay.

Appellee responds that the Bankruptcy Court reduced Appellant's fees within its discretion under 11 U.S.C. § 330(a) and the lodestar method.

## II. ANALYSIS

### A. Standard of Review

A district court reviews a bankruptcy court's finding of fact under a "clearly erroneous" standard and conclusions of law *de novo*. Fed. R. Bankr. P. 8013; *In re Baker Fin. Servs., Inc.*, 110 F.3d 1255, 1259 (6th Cir. 1997). A district court reviews a bankruptcy court's decision to award or reduce attorney's fees for abuse of discretion. *In re Downs*, 103 F.3d 472, 478 (6th Cir. 1998). An abuse of discretion occurs only when the bankruptcy court "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Id.* at 480-81 (citation omitted).

### B. The Lodestar Method, 11 U.S.C. § 330(a), and Rule 9011

5

In making its decision on Appellant's fee request in its May 2, 2007 Order, the Bankruptcy Judge appears to have relied upon two bases: (1) $500.00 plus expenses represented the amount of work performed that was necessary or reasonably likely to benefit the estate under 11 U.S.C. § 330(a) and the lodestar method; and (2) Appellant did not conduct a reasonable investigation of the Debtor's representation concerning his mortgage arrearage under Fed. R. Bankr. P. 9011.

Section 330(a) states in relevant part:

(3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

    (A) the time spent on such services;
    (B) the rates charged for such services;
    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
    (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
    (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)

    (A) Except as provided in subparagraph (B), the court shall not allow compensation for –

        (i) unnecessary duplication of services; or
        (ii) services that were not –

            (I) reasonably likely to benefit the debtor's estate; or
            (II) necessary to the administration of the case.

> (B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

In *In re Boddy*, 950 F.2d 334 (6th Cir. 1991), the United States Court of Appeals for the Sixth Circuit adopted the "lodestar" method for calculating appropriate attorney fees. The Sixth Circuit has recently summarized this analysis:

> The lodestar amount is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. The bankruptcy court also may, in its discretion, consider other factors such as the novelty and difficulty of the issues, special skills of counsel, and the typical compensation, "as long as it expressly discusses these factors in light of the reasonable hours actually worked and a reasonable hourly rate." However, such factors may be duplicative if the court first determines the lodestar amount "because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked."
>
> The starting point in the lodestar analysis is to determine a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The next step in the analysis is to determine the lawyer's reasonable hours. If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper. "While the burden is on the applicant to justify a fee request, the bankruptcy court must expressly discuss the amounts that are not supported by the application and provide a reasoning to support the court's decision."

*In re Williams*, 357 B.R. 434, 438-39 (6th Cir. B.A.P. 2007) (internal citations omitted) (emphases in original).

The test for imposing sanctions under Fed. R. Bankr. P. 9011 is "whether the individual's conduct was reasonable under the circumstances." *Downs*, 103 F.3d at 481. "Factors to consider in making this determination include the amount of time available for investigation, the nature of the

investigation, and whether the claim is based on a plausible view of the law." *In re Cassell*, 254 B.R. 687, 691 (6th Cir. B.A.P. 2000).

The Bankruptcy Court previously found in its March 31, 2006 Order:

The debtor's initial schedule I disclosed monthly net income of $2,451.84 and his initial schedule J disclosed monthly expenses of $1,991.91, leaving $459.93 to fund a chapter 13 plan. The debtor's 36 month plan, filed on January 18, 2005, proposed to pay a 10% dividend to unsecured creditors and to cure the debtor's mortgage arrearage of $897.00.

Almost immediately, on February 2, 2005, the mortgage company filed an objection to confirmation, stating that the arrearage on the mortgage was $8,453.28.

In apparent response to this news, the debtor filed an amended schedule J, reducing his expenses to a meager and unrealistic $1,203.32, thereby increasing the disposable income available for the plan to $1,001.52. This was accomplished by reducing utility expenses from $350 to $210; home maintenance from $50 to $0; food from $350 to 173.41; clothing from $50 to $0; laundry from $25 to $0; medical from $25 to $0; transportation from $150 to $100; recreation from $50 to $25; and payment for a vehicle for wife from $247 to $0. This unrealistic expense budget undoubtedly contributed to the debtor's poor pay history at the time of the confirmation hearing.

Compounding these already significant obstacles to feasibility, the trustee's objection to the plan, filed on March 7, 2005, asserted that the debtor's projected income was overstated on schedule I, based on her calculation from the pay stubs that the debtor had provided. This only meant that there was likely even less money available to fund the plan.

The inevitable result became crystal clear, if it was not already, when on March 17, 2005, the trustee filed a supplemental objection to confirmation on numerous grounds. The more significant objections were that due to a mathematical error in amended schedule J, the debtor's biweekly plan payment should be increased (yet again) from $462.24 to $576.24; that the debtor's statement of financial affairs was inconsistent with the applicant's rule 2016(b) statement regarding attorney fees; that after the debtor's two auto payment obligations expire, additional funds would be available for payment to creditors through the plan; and the plan proposed a direct payment to a secured creditor even though the payments to that creditor were in arrears.

Predictably, at the confirmation hearing on April 13, 2005, the trustee moved to dismiss the case on the grounds that her objections had not been addressed and the debtor's pay history was only 45%. The debtor's attorney stated that the debtor was

not present and that the debtor had no opposition to dismissal. The Court granted the trustee's motion and dismissed the case.

This record overwhelmingly establishes that the applicant should not have recommended or filed a chapter 13 case for this debtor and that the feasibility of a chapter 13 plan was never reasonably arguable due to the lack of net disposable income to cure the substantial mortgage arrearage. Nothing in the record suggests why the applicant could not have readily determined the correct mortgage arrearage amount before filing the case.

The fee application seeks compensation of $1,917.85 for 13.6 hours of services, plus reimbursement of expenses of $74.33. As the district court observed in its remand order, the applicant bears the burden of proving the reasonableness of this request. That burden is especially challenging to meet when the applicant seeks fees for services in a case that should not have been filed. The most natural result of such an analysis would be to conclude that the applicant has not met its burden to establish that any of the hours of service were reasonable or that any of the fees requested are reasonable. Why should any fees be awarded for a case that should not have been filed?

As noted, the applicant's work did enable the debtor to obtain the benefit of the automatic stay for 101 days. The issue is thus to determine the reasonable compensation for obtaining that benefit. Based on the Court's analysis, no hours of service beyond those hours reasonably expended to file the case and obtain the stay are reasonably compensable. According to the application, the only dates on which attorney services were performed to prepare the case for filing were on December 2, 17, and 30, 2004. On those dates, the applicant spent a total of 3 hours at $200.00 per hour, for a total of $600, in services advising the debtor and preparing the papers for filing to obtain the automatic stay. The application also seeks compensation of $52.00 for 0.8 of an hour of service on December 2, 2004, by the applicant's office manager for gathering information from the debtor to prepare documents.

The Court concludes that for its services in preparing the filing, the applicant can reasonably be compensated for no more than 2.5 hours of service at $200 per hour. In the Court's judgment, that is the reasonable value of services performed by the applicant in obtaining the benefit of the automatic stay for the debtor for 101 days. Based on that benefit, the Court reaffirms its prior award of $500.00 in fees plus $74.33 in costs.

*In re Jones*, 339 B.R. 903, 905-06 (Bankr. E.D. Mich. 2006).

The Bankruptcy Court's May 2, 2007 Opinion affirmed its previous findings and additionally indicated that it learned during the hearing that Appellant did not investigate the Debtor's claims about his mortgage situation.

Appellant makes a variety of arguments to attack the bases upon which the Bankruptcy Judge made its ruling. However, none of these arguments demonstrate that the Bankruptcy Court clearly erred in making factual determinations, made erroneous legal conclusions, nor abused its discretion in reducing Appellant's fee request.

Appellant takes issue with the following Bankruptcy Court findings that: (1) the monthly budget of $1,203.32 as listed on the Debtor's Amended Schedule J was "unrealistic"; (2) this "unrealistic" budget contributed to the Debtor's 45% pay history; (3) there was no evidence in the record supporting the Bankruptcy Judge's conclusion that the Debtor's income was overstated; (4) the Bankruptcy Court adopted conflicting objections by the Trustee; (5) Appellant could not reasonably rely upon the Debtor's statements concerning the state of his mortgage; and (6) the 101 days of automatic stay did not benefit the Debtor. Appellant essentially argues that the Bankruptcy Court relied upon "hindsight" information – or data that was not apparent to Appellant at the time of the Chapter 13 filing.

The Court finds that the Bankruptcy Judge adequately addressed Appellant's contentions, and did not abuse his discretion in calculating Appellant's fees.

Appellant admitted that he was aware of the Debtor's monthly net income of $2,451.84 and the fact that he apparently owed $897.00 on his mortgage arrears. Appellant proposed that the Debtor could fund a chapter 13 plan by contributing $459.93 per month (leaving $1,991.91 to

cover the Debtor's monthly expenses), plus a 10% dividend to unsecured creditors and to cure the debtor's disclosed mortgage arrearage. *Jones*, 339 B.R. at 905.

However, per Appellant, lightning struck when the Debtor's mortgage company filed an objection to the Chapter 13 plan two weeks after the Debtor filed his monthly plan. The mortgage company revealed that the Debtor's mortgage arrearage was not $897.00, as the Debtor had disclosed, but rather $8,453.28. Instead of realizing that the substantial mortgage would stymie any realistic Chapter 13 plan, Appellant revised the Debtor's Chapter 13 plan in light of this "new" information, reducing the Debtor's monthly expenses to an unmanageably low amount. The fact of the mortgage arrearage forced the Debtor to revise his monthly expenses to generate $1,001.52 per month for the plan, more than twice the original estimate. The Bankruptcy Court particularly noted the Debtor's infeasible revised line-item expenses, which inter alia: (1) cut his food expenses essentially in half; (2) reduced home maintenance, clothing, laundry, medical, and payment on his wife's vehicle to $0.00; and (3) significantly reduced expenses for transportation and recreation.

Furthermore, Appellant admits that a mathematical error on the Schedule J would increase the amended bi-weekly payment of $462.24 to $576.24, thus further complicating the Debtor's ability to pay.[1]

When the Trustee moved to dismiss the Chapter 13 petition on April 13, 2005, based

---

[1] Appellant contends that there was no evidence for the Bankruptcy Court's reliance on the Trustee's statement that the Debtor's income was overstated. Even if this were true, this Court finds that the Bankruptcy Court did not need to rely upon this ground to find that a reduction of fees was appropriate.

upon the failure of Appellant to address her objections and the Debtor's poor pay history (45%) up to that point,[2] Appellant made no objection to the dismissal.[3]

The Bankruptcy Court reasoned that Appellant should have realized before filing that the Debtor could not have possibly sustained a Chapter 13 plan, given his income, his debts, and his mortgage arrearage. The Bankruptcy Court calculated that, given the fact that the Chapter 13 plan was not "arguable," under § 330(a), the only benefit to the Debtor was the 101 days of automatic stay – and that all other work performed on behalf of the Debtor was futile given the obvious impossibility of filing the Chapter 13 plan.

This Court does not find that Appellant's position demonstrates that the Bankruptcy Court abused its discretion in reducing the attorney fees. Under § 330(a)(4), particularly in the context of attorney services in connection with a Chapter 13 petition, a court must consider the "benefit and necessity of such services to the debtor and the other factors set forth in [§ 330(a)]." Appellant does not dispute the Bankruptcy Court's finding that the only benefit to the Debtor obtained by Appellant was the 101 days of automatic stay. Even Appellant had to concede on April 13, 2005, that the Chapter 13 petition should be dismissed. The Bankruptcy Court further

---

[2] Appellant argues that the Debtor had made a payment to the Trustee that had not posted to the Trustee's Memphis, Tennessee address by the time the Chapter 13 petition was dismissed on April 13, 2005. Appellant contends that on April 19, 2005, the Debtor's payment posted to the Trustee's account, giving the Debtor at that time a pay history of 74%. However, even if the Debtor did so, Appellant obviously did not represent this fact to the Bankruptcy Court on April 13, 2005. In fact, Appellant informed the Bankruptcy Court that neither the Debtor nor he had any objection to the dismissal of the Chapter 13 filing.

[3] Appellant did not attempt at any time to convert the Debtor's Chapter 13 petition into a Chapter 7 petition.

observed that the dismissal "meant that [the Debtor] did not even obtain the benefit of a discharge." *Jones*, 339 B.R. at 905.

Appellant further argues that, for the purposes of Rule 9011, it could reasonably rely upon the Debtor's representations concerning the mortgage arrearage. It is undisputed that Appellant did not follow-up on the stated arrearage amount either by contacting the Debtor's mortgage lender or by requesting verifying documents from the Debtor. According to Appellant's records, Appellant performed work on behalf on the Chapter 13 application on December 2, 7, and 30 – before filing the documents with the Bankruptcy Court on January 3, 2005. *Id.* at 906. This Court cannot say that the Bankruptcy Court abused its discretion in concluding that Appellant should have made a reasonably inquiry into the true mortgage arrearage amount. *See, e.g.*, *In re Stewart*, 247 B.R. 515, 523 (Bankr. M.D. Fla. 2000) (concluding that under the circumstances the debtor's attorney denied for Rule 9011 sanctions for misstating a mortgage arrearage on an amended chapter 13 plan, since he both relied on the debtor's representation and attempted to contact the institutional mortgage note holder, who never responded to the attorney's inquiry and never filed a proof of claim); *In re Robertson*, 105 B.R. 504, 507-09 (Bankr. D. Minn. 1989) (holding that the debtor attorney was liable for Rule 9011 sanctions because he did not make a "reasonable inquiry into the facts" to discover that the debtor had a liquidated, unsecured debt that would have precluded the debtor's eligibility for chapter 13).

Moreover, it is clear that at least since the "discovery" of the mortgage arrearage on February 2, 2005, a Chapter 13 filing would have been infeasible.[4] As the Bankruptcy Court

---

[4] Appellant does not contest the Bankruptcy Court's conclusion that 2.5 hours at $200 per hour was reasonable compensation for preparing and filing the Chapter 13 petition in order to obtain an

13

noted, Appellant did not attempt to convert the case to a Chapter 7 petition, but rather attempted to fit a square peg in a round hole by proposing that the Debtor could afford to earmark almost half of his net income to the plan.

The Bankruptcy Judge did not err in determining that: (1) besides the automatic stay, there was no ultimate benefit or necessity of the services to the estate; and (2) that, given a reasonable inquiry into the facts before filing the Chapter 13 petition, that a Chapter 7 filing would have been the appropriate avenue, if any.

### C. The Michigan Rules of Professional Conduct

Appellant contends that the Bankruptcy Court impermissibly relied upon the Michigan Rules of Professional Conduct in reducing Appellant's requested fees. The Court, however, does not find that the Bankruptcy Court relied upon that ground in its May 2, 2007 Order. To the extent that the Bankruptcy Court implied a violation of the MRPC, see *Jones*, 339 B.R. at 904, this Court vacated that holding in its January 25, 2007 Order. *Jones*, 360 B.R. at 627.

### III. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's Order.

**SO ORDERED.**

    s/Paul D. Borman
    PAUL D. BORMAN
    UNITED STATES DISTRICT JUDGE

---

automatic stay.

Furthermore, Appellant appears to argue that he is entitled to the entire amount in his fee petition. Appellant does not show how, even if the mortgage arrearage "discovery" was not its fault, what specific efforts spent on the case prior to February 2, 2005, would have been nevertheless beneficial or necessary to the Debtor.

Dated: November 30, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on November 30, 2007.

                                               s/Denise Goodine
                                               Case Manager